UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

SHARON E. CROWE,

        Plaintiff,

v.                                        Case No. 08-CV-836

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS,

        Defendant.
_____

## ORDER

On September 10, 2008, plaintiff, Sharon Crowe, filed her Complaint (Docket #1, Ex. A) in the Milwaukee County Circuit Court. In her complaint, plaintiff alleges three state law contract claims. Defendant, International Brotherhood of Electrical Workers ("IBEW"), removed the action on October 6, 2008, to the U.S. District Court for the Eastern District of Wisconsin, alleging that plaintiff's state law contract claims are preempted by federal law, thus, this court has jurisdiction under 28 U.S.C. § 1331 and § 1337. Plaintiff, however, does not agree that federal law should govern, and has filed a Motion to Remand to State Court (Docket #5). Upon consideration of the parties' briefs on this matter, the court concludes that plaintiff's claims are not preempted by federal law, and thus grants plaintiff's motion to remand.

I.      FACTS

During 2007, plaintiff was working as an employee of the IBEW Great Lakes Training Trust Fund ("Lakes Trust Fund"). (Compl. ¶ 5) . In November of 2007, the

IBEW approached plaintiff about working with the IBEW to establish a national training trust fund ("national trust fund"). (Compl. ¶ 6). According to plaintiff, she and the IBEW entered into a verbal agreement whereby she would remain employed by the Lakes Trust Fund, which the IBEW would reimburse for her services. (Compl. ¶ 7). When the Lakes Trust Fund was dissolved in December 2007, plaintiff alleges the arrangement was changed to one in which she was employed by IBEW Local 2150 ("Local 2150"), which leased her to the IBEW. (Compl. ¶¶ 9-10). Under this arrangement, she would continue working for the IBEW developing the national trust fund, but would technically be employed by Local 2150, which the IBEW would reimburse for her salary and expenses. (Compl. ¶¶ 9-10). Plaintiff alleges the IBEW directed her to draft an agreement memorializing the arrangement, which she did, and which she and Local 2150 both signed. (Compl. ¶¶ 11-12, 16). Despite the fact that the IBEW did not sign the contract, she alleges that the IBEW's conduct and course of dealing show that the IBEW assented to the terms of the agreement. (Compl. ¶ 17). Accordingly, she asserts that when the IBEW terminated its relationship with her, without providing the thirty days' notice specified in the agreement, that the IBEW breached the implied contract between the parties, as well as the duty of good faith and fair dealing. (Compl. ¶¶ 18-22, 29-33). She further claims that the doctrine of "Promissory Estoppel" should apply. (Compl. ¶¶ 24-28).

## II. ANALYSIS

### A. Law

"Section 301(a) of the Labor Management Relations Act, 1947 provides jurisdiction in federal district courts for '[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or *between any such labor organizations*." *United Ass'n of Journeymen & Apprentices v. Local 334*, 452 U.S. 615, 616 (1981) (quoting 29 U.S.C. § 185(a)).  The term "between" in the phrase "between any such labor organizations" refers to "contracts" not "suits."  *Wooddell v. IBEW Local 71*, 502 U.S. 93, 98, 100 (1991).  The phrase "between . . . labor organizations" includes contracts between an international labor organization and one of its affiliated local labor organizations.  *United Ass'n*, 452 U.S. 615.  A claim arising from a contract covered by § 301(a) is completely preempted by federal law, and thus "[a]ny such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301."  *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern California*, 463 U.S. 1, 23 (1983) (quoted in *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 64 (1987)).  Accordingly, § 301 claims are within the federal district courts' "original jurisdiction."  *Avco Corp. v. Aero Lodge No. 735, Intern. Ass'n of Machinists and Aerospace Workers*, 390 U.S. 557, 561-62 (1968).  This means that, even though state courts may have concurrent jurisdiction over § 301 claims, defendants have an absolute right to remove such claims to federal court, pursuant to 28 U.S.C. § 1441.

**B. Discussion**

Given the fact that the parties agree that Local 2150 and the IBEW are "labor organizations" for the purposes of § 301(a), and that the alleged contract was "between" Local 2150 and the IBEW and plaintiff, it would seem on its face that plaintiff's motion to remand should be denied. However, such a result would epitomize placing form over substance. Though the contract that forms the basis for plaintiff's claim is technically within the ambit of § 301, it certainly is not at all the type of contract which Congress sought to regulate when it passed the National Labor Relations Act. Indeed, an arrangement pertaining to the employment of one individual does not raise any of the concerns addressed in any of the cases applying § 301.

A primary purpose of the Labor Management Relations Act was "to promote the achievement of industrial peace through encouragement and refinement of the collective bargaining process." *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 509 (1962). Indeed, until the Supreme Court's decision in *Retail Clerks Intern. Ass'n, Local Unions Nos. 128 and 633 v. Lion Dry Goods, Inc.*, 369 U.S. 17 (1962), it was argued that collective bargaining agreements were the only contracts covered by § 301. However, in *Retail Clerks Intern.*, the Court rejected that view, stating that that would make the "between any such labor organizations" language superfluous. 369 U.S. 26. The Court accordingly held that a "strike settlement agreement" between an employer and labor organizations was a contract covered by § 301. *Id.* at 26-28. Of particular import to the instant case, is the fact that the Court explained

-4-

its rationale for so holding by stating: "if this kind of strike settlement were not enforceable under § 301(a), responsible and stable labor relations would suffer, and the attainment of the labor policy objective of minimizing disruption of interstate commerce would be made more difficult." *Id.* at 27. Thus, even though it was clear that the contract at issue met the technical definition of § 301, the Court still thought it necessary that its decision be based on furthering the purposes of § 301.

The fact that a contract meets the technical definition of being a contract between an employer and a labor organization, or between labor organizations, in and of itself does not appear to have ever been considered sufficient to trigger § 301. Thus, even after the *Retail Clerks Intern.* ruling, it was still unclear as to whether the constitution of an international union (which is clearly a contract between labor organizations, namely the local unions) was a "contract" within the meaning of § 301. *Parks v. International Broth. of Elec. Workers*, 314 F.2d 886, 915 (4th Cir. 1963). Indeed, it was not until the Court's ruling in 1981, in *United Ass'n*, that the issue was definitively resolved. 452 U.S. 615. Again, though the Court found that the technical definitions were clearly met, much of the Court's opinion was dedicated to explaining how applying § 301 to disputes between local unions and their international union, founded on the international union's constitution (a "contract"), furthered the congressional intent of § 301. The Court explained that § 301 "provided federal jurisdiction for enforcement of contracts made by labor organizations to counteract jurisdictional defects in many state courts that made it difficult or impossible to bring suits against labor organizations by reason of their

status as unincorporated associations." 452 U.S. at 624. Furthermore, the Court stated, "[s]urely Congress could conclude that the enforcement of the terms of union constitutions-documents that prescribe the legal relationship and the rights and obligations between the parent and affiliated locals-would contribute to the achievement of labor stability." *Id.* Thus, once again, the Court found it necessary to explain how application of § 301 to the contract at issue would contribute to labor stability.

The question of whether to subject a contract between labor organizations to federal law, instead of any number of various state laws, could, of course, become a very contentious and difficult question. It was argued by the respondent in *United Ass'n* that § 301 jurisdiction should only be triggered if the contractual dispute had a "significant impact" on labor-management relations. *Id.* at 625. The Court rejected this argument. *Id.* However, very importantly to the instant case, the Court stated: "We do not need to say that every contract imaginable between labor organizations is within § 301(a)." *Id.* at 627. Clearly this statement indicates that the fact that a court is presented with a contract between labor organizations is not alone sufficient to trigger § 301 (for if it were, then every contract imaginable between labor organizations would be within § 301(a)). So, while the Court has not stated what criteria delineates which contracts between labor organizations do trigger § 301, it seems evident that while a "significant impact" on labor-management relations is not required, what is required is that applying uniform federal law to the contract (as

-6-

opposed to allowing whichever state's law would be applicable apply) must further the congressional intent of achieving labor stability.

Common sense standing alone dictates such a test. Consider if, in the instant case, Local 2150 was leasing a piece of equipment or a building to the IBEW. Certainly that situation would involve a contract between labor organizations. However, it is fairly evident that subjecting that contract to federal law would in no way further the aims of the Labor Management Relations Act, and thus any contractual dispute on the matter would properly involve state law. Similarly, a district court in Maryland held that a settlement agreement between two unions (a contract between labor organizations) was not properly removed to federal court, because, though the technical requirements of § 301 were met, "the [contractual] provisions on which th[e] case [was] founded . . . [had] absolutely nothing whatsoever to do with the important federal interests undergirding the complete preemption doctrine." *Maryland Correctional Law Enforcement Union v. Federation of Maryland Teachers and Public Employees*, 1999 WL 182554, 4 (D. Md. 1999). The settlement agreement in *Maryland Correctional* was not in any way related to labor issues, thus that case is not exactly on point with the instant case. Similarly, the hypothetical previously given (the lease of equipment or a building) would have nothing to do with labor, thus that hypothetical is not exactly on point with the instant case either.

The instant case does relate to labor, in that the contract at issue pertains to the duration of plaintiff's relationship with the IBEW, as well as her salary. However,

it is important to note that though those aspects do relate to "labor," they do not do so in a way that implicates § 301 concerns. This is clearly evidenced by the fact that if the contract were only between the IBEW and plaintiff, then § 301 would not be relevant. *Korzen v. Local Union 705, Intern. Broth. of Teamsters*, 75 F.3d 285, 288 (7th Cir.1996) ("A simple employment contract is not within the scope of section 301, even when the employer is a union."). Rather, § 301 is only relevant because Local 2150 was a party to the alleged contract. However, Local 2150 appears to have no interest in this suit; Local 2150 is not a party, nor does it appear that Local 2150 was harmed by the alleged breach. Thus, even though technically the contract in the instant case was not "a simple employment contract" between only an employee and an employer – which happened to be a union – as was the case in *Korzen*, the fact is that as a substantive matter, that is precisely what this matter presents. *See* 75 F.3d at 288 (holding that a suit based on a contract between a labor organization and an individual, be they employee or member, is not within the scope of § 301).

## III. CONCLUSION

Because the contract forming the basis of the suit in the instant case is essentially an employment contract between an employee and a union, bringing it within the ambit of federal labor law would not in any way assist in achieving national labor stability, nor would it further any other interest protected by § 301. This, coupled with the fact that the removal statute is to be given strict construction, *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 61 (1941), as well as the fact that remand is necessary when federal jurisdiction is doubtful, *Mulcahey v. Columbia*

*Organic Chemicals Co., Inc.*, 29 F.3d 148, 151 (4th Cir. 1994), leads the court to conclude that remand is the appropriate action in the instant case.

Accordingly,

**IT IS ORDERED** that plaintiff's Motion to Remand to State Court (Docket #5) be and the same is hereby **GRANTED**.

Dated at Milwaukee, Wisconsin, this 8th day of April, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge